```
 1              IN THE UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
 2                      SOUTHERN DIVISION

 3   UNITED STATES OF AMERICA,    )
                                  )
 4   -vs-                         )    Criminal Case Nos.
                                  )
 5   D-5 WILLIAM T. PHILLIPS,     )    2:17-mj-30366-DUTY-1
                                  )    2:17-cr-20632-SJM
 6            Defendant.          )
     _____
 7


 8                           PLEA HEARING
                BEFORE THE HONORABLE STEPHEN J. MURPHY
 9                  UNITED STATES DISTRICT JUDGE
            Detroit, Michigan - Thursday, December 21, 2018
10


11   APPEARANCES:

12   FOR THE GOVERNMENT:    APRIL RUSSO, ESQ.
                            United States Attorney's Office
13                          211 W. Fort Street, Suite 2001
                            Detroit, Michigan 48226
14                          (313) 226-9100

15   FOR THE DEFENDANT:     LISA L. DWYER, ESQ.
                            500 Griswold Street, Suite 2320
16                          Detroit, Michigan 48226
                            (313) 962-0000

17

18

19

20

21   REPORTED BY:          Darlene K. May, CSR, RPR, CRR, RMR
                            231 W. Lafayette Boulevard
22                          Detroit, Michigan 48226
                            (313) 234-2605

23

24   (Proceedings reported by mechanical stenography.  Transcript
      produced by computer.)
25
```

1

2

TABLE OF CONTENTS

3 <u>WITNESSES:</u>

4          None

5

6

7

8

9

10 <u>EXHIBITS:</u>

11          None

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    Thursday, December 21, 2018

 2                    11:37 a.m.

 3                              -- --- --

 4           THE CLERK OF THE COURT:  The United States District

 5  Court for the Eastern District of Michigan is now in session.

 6  The Honorable Stephen J. Murphy presiding.

 7           You may be seated.

 8           The Court calls case number one 17-20632, the United

 9  States of America versus William Phillips.

10           Counsel, please state your appearances for the record.

11           MR. RUSSO:  Good morning, Your Honor.  April Russo on

12  behalf of the United States.

13           THE COURT:  Good morning.

14           MR. DWYER:  Your Honor, good morning.  Lisa Dwyer on

15  behalf of William Phillips.

16           THE COURT:  Good morning to you.  How are you doing

17  today?

18           MR. DWYER:  Very good, Your Honor.  Thank you.

19           THE COURT:  Good.  And we've got Mr. Phillips next to

20  his lawyer.

21           And good morning to Mr. Phillips as well.  We are

22  going to have a hearing on a Rule 11 Plea Agreement, as I

23  understand it.  Correct?

24           MR. DWYER:  Correct, Your Honor.

25           THE COURT:  Okay.  So we're going to give an oath to
```

```
 1    Mr. Phillips.
 2              David, if you would swear in our deponent, we would
 3    appreciate it.
 4              THE CLERK OF THE COURT:  Mr. Phillips, would you raise
 5    your right hand.
 6              Do you solemnly swear that the testimony you're about
 7    to give in this court shall be the truth, the whole truth and
 8    nothing but the truth, so help you God?
 9              THE DEFENDANT:  I do.
10              THE COURT:  Thank you, Mr. Phillips.  Now I'm going to
11    ask you a number of questions about this crime that the United
12    States has alleged against you as well as your decision to
13    plead guilty.  Since you have been placed under oath, it's very
14    important for you to be truthful.  If you intentionally avoid
15    your oath and say something that is not true, you could be
16    given a severe negative consequence.  You may not get the
17    credit you're entitled to for having truthfully pled guilty.
18    So it's very important that you answer all my questions
19    honestly and to the best of your ability.  Do you understand
20    that?
21              THE DEFENDANT:  I do.
22              THE COURT:  Okay.  All right.  I think if you just
23    pull that mic toward you, you don't have to speak toward it,
24    it'll pick you up just fine for our guest court reporter.
25              Who, by the way, we appreciate for sitting in on all
```

```
 1   of these cases this morning.

 2              What is your full name, sir?

 3              THE DEFENDANT:  William Thomas Phillips.

 4              THE COURT:  And where were you born?

 5              THE DEFENDANT:  Poughkeepsie, New York.

 6              THE COURT:  New York?

 7              THE DEFENDANT:  Yeah.

 8              THE COURT:  Poughkeepsie?

 9              THE DEFENDANT:  Poughkeepsie, yes.

10              THE COURT:  Okay.  All right.  How old are you today?

11              THE DEFENDANT:  Thirty-eight.

12              THE COURT:  And how far did you go in school?

13              THE DEFENDANT:  A little bit of college.

14              THE COURT:  Do you read and write the English

15   language?

16              THE DEFENDANT:  Yes, I do.

17              THE COURT:  You understood everything I've asked you

18   so far, correct?

19              THE DEFENDANT:  Yes, I have.

20              THE COURT:  If you have a problem understanding

21   anything I ask you, tell me and I'll explain it or repeat my

22   question.  If you have a need to consult privately with

23   Ms. Dwyer, tell me that and I'll give you that opportunity as

24   well.  All right?

25              THE DEFENDANT:  Yes.
```

1          THE COURT:  Have you been treated recently for any

2   mental illness or any sort of addiction to narcotic drugs?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Are you under the influence of any drug,

5   medication or alcoholic beverage as you stand here in court

6   today?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Do you feel alert, awake and clear headed?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Ms. Dwyer, is there any negative

11   information regarding your client's competence to plead guilty

12   that we should consider before going further?

13          MS. DWYER:  No, sir.  In fact, I have spoken with

14   Mr. Phillips twice this week and he's doing very well.

15          THE COURT:  All right.  Thank you very much.  I find

16   that William Phillips is thinking clearly, he is not under the

17   influence of drugs or alcohol and he is competent to offer a

18   guilty plea at this time.

19          Mr. Phillips, you have the right to have an attorney

20   represent you during all stages of the proceedings.  The Court

21   will appoint an attorney for you if you can't afford one

22   yourself.  Do you understand that right?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Have you discussed your case completely

25   with Ms. Dwyer?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Are you confident that you understand all

3  of the advice that she's given to you?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Have you carefully considered her advice

6  and listened to all of it as you have made your decision to

7  plead guilty?

8            THE DEFENDANT:  Yes.

9            THE COURT:  It's your decision, not that of Ms. Dwyer

10  or anyone else, to plead guilty because you think it's your

11  best decision to make in the case at this time; is that

12  correct?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  Have you made your decision to plead

15  guilty at least in part because you're actually guilty of this

16  crime of child exploitation enterprise?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  If I accept your plea today, you'll be

19  convicted of that crime and you won't have a trial.  Do you

20  understand that?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  There are constitutional rights you give

23  up by -- well, I should say, if you had a trial, you would have

24  a number of constitutional rights and you give them up

25  permanently by pleading guilty in this case.  It's important

1  that I make sure you understand all the rights you're giving

2  up.  I'll list the rights you give up by pleading guilty and

3  ask you whether you understand them.  So listen carefully,

4  okay?

5          First of all, you give up the right to plead not

6  guilty and to have a trial by jury with a lawyer assisting you.

7  You give up the right to be presumed innocent and the right to

8  have the government prove beyond a reasonable doubt that you

9  are guilty.

10         You give up the right to watch and to listen as

11  witnesses against you testify and the right to question or to

12  challenge those witnesses.  And you give up the right to have

13  the Court order witnesses you may have in your defense come to

14  court and give testimony, if you want to present a case.

15         You give up the right to have -- to decide not to

16  plead -- to excuse me.  Not to testify.  Not to put on any

17  evidence and those facts would not be used against you in your

18  trial in any way.  Finally, you've given up the right to appeal

19  your conviction based on the plea and the right to appeal your

20  sentence as long as I give a sentence that is generally the

21  same as that that the lawyers have estimated or recommended in

22  the Rule 11 plea agreement.

23         Now, your decision to plea guilty this morning means

24  that all those rights I just went over with you will be given

25  up permanently in this case.  Do you understand all the rights

1    that I just explained to you?

2            THE DEFENDANT:  I do.

3            THE COURT:  All right.  Have you received a copy of

4    the Indictment that charges you with child exploitation

5    enterprise in Count One?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  All right.  I am going to explain the

8    elements of this count, of which there are four.  Elements are

9    the points of proof that the government has to submit beyond a

10   reasonable doubt before you can be convicted of the crime.  The

11   first element of Count One is that you violated federal law by

12   producing child pornography in coercing or enticing a minor.

13   The government has to prove that what you produced meets the

14   definition of child pornography laid out in that law.

15           Secondly, they have to prove that the violations you

16   engaged in in element one were part of a series of felonies

17   that constituted three or more separate incidents.  They have

18   to show that the series of violations, the three or more

19   violations involved more than one victim; and, finally, they

20   have to show that you committed the violations in concert with

21   at least three other individuals.

22           So there is a series of levels of proof that they have

23   to make before you can be convicted of child exploitation

24   enterprise.

25           Do you understand that those are the elements of this

1   crime that you're charged with in Count One?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  All right.  A possible maximum penalty for

4   a person who violates this statute, 18 U.S.C. Section

5   2252(a)(G), is life imprisonment.  There's a mandatory term of

6   20 years that I have to impose on a count of conviction of that

7   sort.  You can be fined as much as $250,000 and there's a

8   $5,000 special assessment on each count of which you're

9   convicted that you must pay.  By pleading guilty, you expose

10  yourself to those possible maximum and minimum penalties that I

11  just read.  Do you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Okay.  If you go to prison in this case,

14  you'll be sentenced to what is known as supervised release.

15  Supervised release is the obligation of the probation

16  department to supervise people once they're released from

17  prison.  If you violate a condition of your supervision, you

18  could be sent back to prison for additional time even though

19  you have already served the entire sentence for the crime

20  you're admitting to here today.  Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  All right.  Restitution is money that you

23  might owe to victims of your conduct for having taken property

24  or things from them.  Forfeiture means the things that you

25  accumulated or used during the crime could be given over to the

1    United States.  Both restitution and forfeiture may be part of

2    your sentence in this case.  Do you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  All right.  Any sentence in the case will

5    be governed by federal law.  That includes the United States

6    sentencing guidelines.  Under that law, it's the job of the

7    judge and not the prosecutor, defense attorney or probation

8    department to make final decisions about your sentence.  The

9    sentencing guidelines establish a score based upon the

10   seriousness of this offense, along with any criminal history

11   you might have, and the score results in a range of suggested

12   sentences.

13             My decision about your sentencing range may be the

14   same as those that the lawyers have agreed to in the plea

15   agreement, but it might be different.  I might find that a

16   higher or a lower sentence applies -- excuse me.

17             Sentencing range applies to this case.  Do you

18   understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  If the government makes a recommendation

21   about your sentence, I'm not required to accept it.  I could go

22   lower than what the government asked me to do in this

23   particular case.  Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  All right.  And finally, as I believe I

1    eluded to, the sentencing guidelines are not mandatory.   They

2    are advisory.   And if there are statutory factors, like those

3    found in 18 U.S.C. Section 3553 or in the guidelines themselves

4    that convince me to vary from the sentence, I could do that.

5    The sentencing range.   What that means, is that I could give a

6    higher or a lower sentence than what is in the guideline range

7    that applies, if I find that the nature and circumstances of

8    the offense, your circumstances, the need to sentence that

9    would reflect the seriousness of the offense, promote respect

10   for the law or punishment and deterrence for the criminal

11   conduct would support a variance.

12              Those are just a few of the factors that could

13   convince me to vary from the applicable sentence range.   Now, I

14   could never go higher than the maximums or lower than the

15   minimums that I suggested to you earlier, but I could vary

16   based on statutory factors.   Do you understand that?

17              THE DEFENDANT:   Yes.

18              THE COURT:   All right.   Finally, parole has been

19   abolished in the federal court system.   If you're sentenced to

20   prison in this case, you won't be released on parole.   Do you

21   understand that?

22              THE DEFENDANT:   Yes.

23              THE COURT:   All right.   Your plea of guilt today is a

24   result of discussions between Ms. Dwyer, who represents you,

25   and Ms. Russo, who appears on behalf of the United States.   I

1    haven't been involved in their discussions.  I haven't approved

2    of your plea agreement in advance and I haven't predicted any

3    particular sentence in the case.  Do you understand all of

4    that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Did you have an opportunity to thoroughly

7    read over and discuss this plea agreement with Ms. Dwyer before

8    you signed it and appeared in court here today?

9              THE DEFENDANT:  Yes.

10             THE COURT:  All right.  Ms. Russo, if you would

11   summarize just the most important terms of the plea agreement

12   at this time, we would be grateful.

13             MR. RUSSO:  Yes, Your Honor.  There is, as Your Honor

14   mentioned, a mandatory minimum of 20 years imprisonment and a

15   maximum of life.  The supervised release term is the mandatory

16   minimum of five years in this case and a maximum of life.  The

17   maximum fine is $250,000.

18             The parties' recommendation and agreed --

19   recommendation pertaining to the guideline range is that the

20   guideline range is life and that the criminal history score is

21   one and the offense level is 43 in this case.

22             The Court is not bound by that recommendation

23   concerning the guideline range and the defendant understands

24   that he will have no right to withdraw his guilty plea if the

25   Court does not follow the recommendation.

1          There's a relevant conduct section on page 11.  And

2  then on page 12, it specifies that there is a mandatory minimum

3  of 20 years and a mandatory minimum with respect to supervised

4  release, as well as listing the special assessment that the

5  Court has already read out loud.

6          On page 13, it explains that the defendant by signing

7  this Rule 11 and pleading guilty today has agreed to pay

8  restitution in the amount of $5,000 to any identified victim

9  associated with his conduct on Website A and/or his membership

10  in the above described group from 2012 through April of 2017.

11  And that any identified victim will still maintain a right to

12  request a larger amount of restitution from the Court, but that

13  the defendant has agreed to pay that minimum of $5,000 per

14  victim.

15          The defendant also understands that by pleading guilty

16  today in this case, he's going to be required to register as a

17  sex offender, and there's a paragraph outlining that on page 13

18  and 14 of the Rule 11.

19          The forfeiture agreement as to the defendant's devices

20  is on pages 14 through 16 and it explains that if there is

21  evidence of a crime or child pornography on his devices, he has

22  to forfeit those devices.

23          Page 16 also explains that if the Court were to allow

24  the defendant to withdraw his guilty plea for a fair and just

25  reason pursuant to Federal Rule of Criminal Procedure

1   11(d)(2)(B), the defendant waives his rights under Federal Rule

2   of Evidence 410 and the government may use his guilty plea, any

3   statement made under oath at the change of plea hearing and the

4   factual basis statement in his plea agreement against him in

5   any proceeding.

6           The recommendations in part three of the Rule 11

7   agreement are not binding on the Court.  The defendant has no

8   right to withdraw his guilty plea and the parties have no right

9   to withdraw from this agreement if the Court decides not to

10  follow them.

11          The appeal waiver is listed on page 17 and that

12  explains that the defendant has waived any right he may have to

13  appeal his conviction by pleading guilty today and that if the

14  sentence imposed does not exceed the maximum recommendation

15  allowed by part three of the agreement in this case, Your

16  Honor, the parties have agreed that the guidelines are life.

17  The defendant has waived any right he may have to appeal his

18  sentence.

19          Those are the material terms of the Rule 11, Your

20  Honor.

21          THE COURT:  Okay.  Thank you very much for that

22  presentation.

23          And let me ask Ms. Dwyer whether she agrees with the

24  summary of the guilty plea agreement that the AUSA just gave.

25          MS. DWYER:  I agree, Your Honor.

1            THE COURT:  Okay.  Do you believe it's in your

2   client's best interest to pursue the agreement?

3            MS. DWYER:  I do, Your Honor.

4            THE COURT:  And, Mr. Phillips, do you also agree with

5   the statements and the guilty plea agreement that the AUSA just

6   made?

7            THE DEFENDANT:  I do.

8            THE COURT:  Okay.  You're confident that your attorney

9   fully explained the entire agreement to you before you signed

10  it, right?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And you want to live by its terms and go

13  forward today, correct?

14           THE DEFENDANT:  Yes.

15           THE COURT:  All right.  The government lawyer is

16  recommending this sentence at a particular level of life

17  imprisonment.  I will consider their recommendation.  I can't

18  guarantee that I will follow it.  There's a chance you might

19  get less than a life sentence.  There's a chance you might get

20  a life sentence, but whatever your sentence is, that's not a

21  reason for you to withdraw from your guilty plea.  Your plea of

22  guilt here this morning is a permanent decision.  Do you

23  understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  All right.  Now, I have an agreement up

1    here labeled "Cooperation Agreement" which indicates that you

2    will provide information, maybe testimony, things of that sort,

3    to the United States.  And the government says that they'll

4    make a decision about asking me to reduce your sentence below

5    whatever sentence you would otherwise receive based on that

6    agreement.  You're aware of that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  All right.  The agreement has not been

9    carried out.  The government has not made a decision about how

10   much to value any assistance that you provide.  They have to

11   make a professional judgment about what to ask me to do with

12   your sentence.  And then once they do that, I have to decide

13   whether their request is legitimate and how much to value your

14   assistance.  I'll do that independently and I'm not bound by

15   the government's recommendation.  I could go higher or lower

16   than what they asked me to do in terms of cooperation, if

17   anything.  Do you understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  And, I guess, most important

20   is that at this point, you don't have any guarantees or any

21   locked-in particular assistant -- sentence, based on your

22   assistance.  Do you understand that as well?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.  Has anyone tried to force you

25   or threaten you in any way to get you to plead guilty?

1              THE DEFENDANT:  No.

2              THE COURT:  Has anyone done anything that you think is

3      improper, illegal or unethical to get you to plead guilty?

4              THE DEFENDANT:  No.

5              THE COURT:  And except for what has already been

6      stated here in open court or what's in the written plea

7      agreement, are there any other promises that I wouldn't be

8      aware of that have been made to get you to plead guilty?

9              THE DEFENDANT:  No.

10             THE COURT:  All right.  Let's turn to Count One of the

11     Indictment and the charge of child exploitation enterprise.

12     How do you wish to plead, guilty or not guilty, to that count

13     at this time?

14             THE DEFENDANT:  Guilty.

15             THE COURT:  What did you make -- what did you do to

16     make yourself guilty of the crime of child exploitation

17     enterprise?

18             THE DEFENDANT:  I was in a website when underage girls

19     were on webcam with a few other people in the chat room.

20             THE COURT:  All right.  You went to a website with a

21     chat room and I take it you enticed or worked with other

22     individuals to entice or bring young girls into the chat room

23     for the purpose of recording them; is that right?

24             THE DEFENDANT:  For the most part, yes.

25             THE COURT:  Yeah.  You would type conversation with

1    these girls in the chat room and, as I understand the factual

2    basis of your plea, in your agreement, you wanted them to

3    engage in certain sexual activity -- masturbation, touching

4    themselves, showing their genitals and upper thigh areas -- so

5    that others that you were working with would record this

6    activity in the chat room and then you would have an image of

7    it that you could distribute; is that correct as well?

8              THE DEFENDANT:  For the most part, yes.

9              THE COURT:  What's the ...

10             Why don't you just go ahead -- actually, I tell you

11   what, since we're going to do this anyway, let me ask the

12   Assistant United States Attorney.

13             You generally have questions that you ask to follow up

14   on the factual basis.  Why don't you ask your questions to help

15   establish the factual basis for the plea and we'll see if

16   everybody is satisfied after that.

17             Go ahead, Ms. Russo.

18             MR. RUSSO:  Yes, Your Honor.

19             Mr. Phillips, just to start out, did you look over the

20   factual basis of the Rule 11 between pages three through eight,

21   before coming into court today?

22             THE DEFENDANT:  Yes.

23             MR. RUSSO:  Do you agree with the sentences in those

24   pages, pages three through eight?

25             THE DEFENDANT:  Yes.

1          MR. RUSSO:  And were you a part of a group of

2    individuals from August of 2016 to approximately July of 2017

3    on Website A?

4          THE DEFENDANT:  Yes.

5          MR. RUSSO:  And was the objective of that group to get

6    girls to undress and masturbate on web camera?

7          THE DEFENDANT:  Yes.

8          MR. RUSSO:  And did that happen where you got a girl

9    successfully to do that on more than three different occasions?

10          THE DEFENDANT:  Yes.

11          MR. RUSSO:  And this was on the internet?

12          THE DEFENDANT:  Yes.

13          MR. RUSSO:  And this group that you were a part of,

14    did it have -- did it always at all times have more than five

15    members?

16          THE DEFENDANT:  For the most part, yes.  To my

17    recollection, yes.

18          MR. RUSSO:  And these girls that you said masturbated

19    on web camera, you said they were under age.  Did that mean

20    they were under the age of 18?

21          THE DEFENDANT:  Yes.

22          MR. RUSSO:  Did you know that they were under the age

23    of 18 at the time?

24          THE DEFENDANT:  Yes.

25          MR. RUSSO:  And it was more than one girl that was

1    under the age of 18 that did this?

2            THE DEFENDANT:  Yes.

3            MR. RUSSO:  Do you agree that -- does defense

4    stipulate, generally, that NV 13 and NV12 reside in the Eastern

5    District of Michigan?

6            MS. DWYER:  So stipulated.

7            MR. RUSSO:  And at sometime that this occurred where

8    these girls were masturbating on web camera you recorded it; is

9    that right?

10            THE DEFENDANT:  Yes.

11            MS. RUSSO:  And you recorded at least three different

12    minors engaged in masturbation on web camera; is that correct?

13            THE DEFENDANT:  Yes.

14            MR. RUSSO:  Okay.  I don't have any further questions,

15    Your Honor.

16            THE COURT:  All right.

17            MR. DWYER:  One moment, Your Honor.

18        (Pause.)

19            THE COURT:  Let me ask, Ms. Dwyer.  Are you satisfied

20    that there's a factual basis proper for the plea and that the

21    Court has complied with Rule 11?

22            MR. DWYER:  Satisfied, Your Honor.

23            THE COURT:  Okay.  How about you, Ms. Russo?

24            MR. RUSSO:  I am, Your Honor.

25            THE COURT:  All right.  Now, Mr. Phillips, I believe

1   your proposed guilty plea is supported by facts.  I also find

2   that you know what you're doing and you're acting competently

3   and voluntarily in giving up your rights.  I'm prepared to

4   accept your plea of guilt here this morning, but I want to ask

5   one final time:  Are you certain you want me to accept your

6   guilty plea here in open court?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  All right.  I accept the defendant's plea

9   of guilt to Count One of the Indictment.  I find him guilty of

10  the offense of participation in a child exploitation

11  enterprise.  I will refer Mr. Phillips to the probation

12  department for the preparation of a presentence report.  Both

13  of the counsel in the case may file objections to the

14  presentence report in advance of the sentencing hearing and at

15  sentencing Mr. Phillips, and Ms. Dwyer on his behalf, will have

16  an opportunity to speak to the Court about the proper sentence.

17          Potential victims of the crime will have the

18  opportunity to be heard on that day.

19          And, Ms. Dwyer, we will give you a referral form so

20  you can take your client -- at least meet with your client and

21  probation department today, hopefully, to begin debriefing for

22  the presentence report.

23          The date of sentencing is going to be Wednesday, April

24  4, 2018.  That'll be 10:30 a.m. in this courtroom and everybody

25  will be required to be here at that time for sentencing.

1              In the meantime, the defendant, Mr. Phillips, will be

2    remanded to the custody of the marshal for their care and

3    supervision until the date of sentencing.

4              And I would ask whether or not anyone has anything

5    further to state at this time.

6              Ms. Russo?

7              MR. RUSSO:  Your Honor, I'm almost certain that you

8    said this, but I think I missed it.  Did you find that the plea

9    was voluntary and there was a factual basis?

10             THE COURT:  Yes.  And I asked you if you were

11   satisfied and you said that there was.

12             MR. RUSSO:  I apologize, Your Honor.  I think all of

13   the pleas this morning are blurring in my head a little bit.

14             THE COURT:  I find that your proposed guilty plea is

15   supported by facts.  You know what you're doing.  You're acting

16   competently and voluntarily and giving up your rights.  I went

17   through all that.

18             MR. RUSSO:  Thank you, Your Honor.

19             THE COURT:  Okay.  That's why I use a scrip.  I don't

20   sound very natural, but I try not to miss anything.

21             MS. DWYER:  Your Honor?

22             THE COURT:  Yes, Ms. Dwyer?  What's on your mind?

23             MR. DWYER:  May we take the cooperation agreement

24   under seal?

25             THE COURT:  Yes.  I would simply ask that one or

1   either of you stipulate to a motion and order to seal the

2   agreement.  And I'll be happy to do that for reasons of safety

3   and the common reasons that are given to keep such things

4   confidential.

5           MR. DWYER:  Thank you, Your Honor.

6           MS. RUSSO:  I will file that later today, Your Honor.

7           THE COURT:  All right.  Thank you all very much and

8   we'll be in recess.

9           MR. RUSSO:  Thank you.

10          MS. DWYER:  Thank you.

11      (At 12:03 p.m., matter concluded.)

12                          -   -   -

1                    C  E  R  T  I  F  I  C  A  T  E

2

3          I, Darlene K. May, certify that the foregoing is a

4   correct transcript from the record of proceedings in the

5   above-entitled matter.  I further certify that the transcript

6   fees and format comply with those prescribed by the Court and

7   the Judicial Conference of the United States.

8

9   March 15, 2019              /s/ Darlene K. May
    Date                        Darlene K. May, CSR, RPR, CRR, RMR
10                              Federal Official Court Reporter
                                Michigan License No. 6479
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25