United States District Court
Eastern District of Michigan
Southern Division

United States of America
V.
William Phillips

Case nos:.
2:17-cr-20632
2:18-cr-20128

Request for Relief of Judgment
Pursuant to Rule 60(b)

I, William Phillips, must proceed Pro Se due to the limit funds that I have and the dwindling funds of my mother's retirement. I simply can not ask her to retain me another lawyer at this time. Also, due to the time constraints of a 60(b)(1) being limited to year ~~year~~ from denial (July, 12, 2022 denial of my 2255) The law firm I hired does not have the time to get this ready. It would cost my mother tens of thousands of dollars just for this request. I simply can't ask her to do that. With all that being said, my family and friends want me to ask you for reconsideration as well. I know Pro Se filings in the past have not done me well but I have no choice but to do this myself. So the following will be honest and straight forward.

My request is simple: I request that this court please relieve me of the judgment denying my 2255 on July 12, 2022. It is my understanding that there was not enough on the record to warrant a hearing due to the fact that my 2255 was not signed under the penalty of perjury nor did I file a sworn affidavit. I request that this court allow me to amend my 2255 petion by simply allowing me to file under the penalty of perjury an/or file a sworn affidavit. Also, I'm asking for my mother, Barbara Phillips, to be able to file a sworn affidavit on my behalf. I do not want to add any new claims nor do I want a review of the merits. I just want to verify the original 2255 filed in July of 2019.

From it's initial filing in July of 2019 until this courts denial on July 12, 2022, I and those involved in my case (lawyers, mother, family, friends), had any reason to believe that the 2255 filed by Mr. Michael Skinner was in any way defective. For nearly 3 years we were unaware. It wasn't until the July 12, 2022 denial that the violation was brought to my attention. The Sixth Circuit later affirms the denial on May 25, 2023. In the affirmation the Sixth Circuit brings to my attention that it was a Rule 2(b)(5) violation of the Rules Governing 2255 Proceedings. After reading Rule 2 I then go on to read the Notes of the Advisory Committee on 2004 Amendments. To summarize the committee goes on to say that due to the one year deadline of the AEDPA of 1996, petioners now face a significant penalty if they file a defective motion because a second motion can not be filed. The Last sentence goes on to say"...the better procedure was to accept the defective motion and require the moving party to submit a corrected motion that conforms to Rule 2." (Emphasis Added). That is all I ask for.

In Kafo v. U.S., 467 F.3d 1063 7th (2006), the Seventh Circuit is faced with the same situation. They agree that since Kafo's 2255 was not filed under the penalty of perjury or accompanied by a sworn affidavit there was not enough on the record to warrant an evidentiary hearing. The same issue as me. However, they remanded it back to the District Court to allow Kafo the opportunity to submit a verified version of his motion or a supplemental affidavit. The Seventh Circuit goes on to say" The (district) court did not follow, however, the 'better practice', suggested by the Advisory Committee Notes, of instructing Mr. Kafo to amend his motion by submitting it under oath or by attaching an affidavit. Had that practice been followed, the statements Mr. Kafo made in his motion would have

2

constituted at least SOME EVIDENCE of his allegations..."(Kafo @1070). I respecfully request that same opportunity as Mr. Kafo. (see also U.S. V. Guerrero, 488 F.3d 1313 1315-1317 10th 2007).

This court has followed the "better procedure" in the past, without a remand from the Circuit court. In both U.S. v. Hansberry (2021 U.S. Dist Lexis 56737) and U.S. v. Clements (2021 U.S. Lexis 119862) this court allowed both petioners the opportunty to fix their defective motion. In Hansberry this court catches two Rule 2(b) violations. Calling petition "defective", the court allowed Mr. Hansberry " an opportunity to conform his motion to Rule 2(b)'s PROCEDURAL. REQUIREMENTS." (Emphasis Added). This court goes on to quote Guereero (1315-17) and Kafo (1069-71). In Clements this court found a "technical error" in it's initial screening of the 2255 filed by Mr. Clements. The "technical error" was the same as mine: A rule 2(b) violation because he failed to file under the penalty of perjury. Clements was then allowed "to amend the motion so that it could comply with Rule 2."

Both Hansberry and Clements were allowed to fix their defective motion at the begining of their 2255 proceedure. In contrast to my defect which was brought to me 3 years after it was filed and nearly 4 years until the Sixth Circuit clarifies it as a 2(b)(5) violation. What's more is that I had an evidentiary hearing granted to me BEFORE the defect was brought to anyones attention. The Goivernment even agreed to have a hearing TWICE before the defect was brought to their attention, both in their response to my 2255 and in the joint motion to remand filed on March 18, 2022. I, or anyone else connected with my case had reason to believe that anything was wrong with my originally filed 2255.

3

"In the July 12, 2022 Omnibus Order denying my 2255, this court acknowledges that "further research" was needed to discover the defect. To me that means this court accidentally missed this defect at the initial screening of my motion. I can't even imagine how busy this court can be so it's completely understandable how something like this can slip through the cracks. If I'm reading this correctly the Sixth Circuit says in <u>Barrier v. Beaver</u>, <u>712</u> <u>F.2d</u> <u>231</u> that rule 60(b)(1) encompassess mistakes that constitute inadvertent judicial oversight. The fact that it took "further research" shows that this court inadvertently overlooked the defect. It was a mistake but it was accidental. I ask that that accident not be reason my 2255 proceedings are closed.

It is also worth noting that Mr. Skinner withdrew from my case due to his deteriorating eyesight. He suffered from Occult Macular Degeneration for nearly 20 before being declared legally blind on July 21, 2020. It is very feasible that Mr. Skinner's eyesight may have contributed to him missing the fact that he never attached an oath under the penalty of perjury. Also, I wonder everyday what would have happened had Mr. Skinner never withdrew from my case, or if he told me that his eyesight was so poor that withdrawl was a possibility. If he doesnot withdraw, then the originally scheduled hearing takes place and my evidence and claims are on the record. In the alternative, had we known that Mr. Skinner was going blind I could have retained a lawyer much earlier and have the hearing. In retrospect, Mr. Skinner's withdrawl caused delays that ended up hurting me.

Unfortunaely, due to the delays and us not knowing that the 2255 was not signed under the penalty of perjury, my mother's corresdondence with Ms. Lisa Dwyer were never brought forward. My mother was specifically

4

mentioned in Ms. Dwyers Declaration attached to the Government's response to my 2255. My mother did have correspondence with Ms. Dwyer directly before and directly after sentencing. Since a hearing was granted my mother was of the understanding that her correspondence would come out then. Her correspomdence with Ms. Dwyer involved phone calls and emails. My mother has copies of those emails still. Those emails show that: Ms. Dwyer was sick before and after sentencing; we wanted to challenge my sentence; they show issues about my sentence that we felt are wrong and wanted to challenge; they show we wanted her to consult with me about appealing; they even show that Dwyer herself did NOT understand my sentence. Had anyone told my mother that a sworn affidavit was needed to strengthen the record she would have done so. In fact, my mother has one ready now. We (my mother and I) respectfully request that she be able to file an affidavit in support of our accusations. We neglected to file simply because the hearing was granted leading us to believe that there was nothing wrong with the 2255.

What was never brought to this court's attention was the factual inaccuracies of Ms. Dwyers declaration. In other words, what Dwyer swears to be "true and correct" are not true nor correct. Though I have many disagreements with her declaration, I will not put those forward unless this court ask me to file a sworn affidavit (I will file one if asked). I will, however bring to this courts attention that Dwyer's dates that she put on pg. 3 of the declaration are factually wrong. On pg. 3 Ms. Dwyer swears she was with me on July, 16 2018. She was not with me on that date. My mother specifically email Dwyer on the 16th to ask when she was coming to see me at Dickerson County jail in Wayne county. Ms. Dwyer replies that she will NOT be seeing me that day. As of me typing this court court I'm waiting for a copy of that email to arrive here at Otisville. If it arrives in time I will

5

attach that email. If not, my mother will gladly send it to you. I wanted to bring this to the courts attention in a reply, but Mr. Skinner advised me that we will bring it up at the evidentiary hearing. I am suffering from a "significant penalty" because of a "defective motion" that I was not aware of for three years, in which the "better procedure" is to allow the defect to be fixed (2004 Advisory committee Notes for Rule 2 Governing 2255). Yet Ms Dwyer can swear under oath that the declaration is true and correct when it is not. I'm sorry Your Honor that is not fair. Because of Dwyer's mistake of facts, the record being used is untrue. (also note that in the July 12, 2022 denial order it says that Ms. Dwyer said that it was to my benifit to have the same day sentencing, it was AUSA Russo that said that not Dwyer).

2

***** I RESPECTFULLY REQUEST THAT THE FOLLOWING PAGES NOT BE PUT ON THE RECORD AND BE REDACTED FOR SAFETY REASONS*****

In conclusion I pray this court sees mine and my families side of this. Had this defect in the original 2255 been brought to our attention we would have fixed it. We respectfully request for that oportunity now. We understand that this was an unintentional oversight but we beg that we get the same oportunity as Hansberry and Clements. Plus. the "better procedure" is to give the petioner an opportunity to fix it as per the Advisory Committee Notes. I've read many cases on the law library here, both in and out of the Eastern District of Michigan and the Sixth Circuit, that agree with this a approach. (Patensky v. U.S. 2019 U.S. Dist. LEXIS 82014 "unremedied technical failures should not become a trap to avoid a merit adjudication." ((quoting Kafo @1071) court gave defendant opportunity to comply, U.S. v. Dunbar ED KY 2020 U.S. Dist Lexis 89722, allowing defendant a month to comply with Rule 2(b)(5), then dissmissing for failure to comply. U.S. v. Smith EDKY 2018 U.S. Dist Lexis 144027, Dissmissing after 14 days AND 3 more weeks exstension to comply with rule 2(b)(5). White v. U.S. 2022 U.S. Dist Lexis 84625, Allowing White to file affidavit to support his claim after Government did not object to hearing). I understand I'm not a lawyer and these citation are not formatted correctly but these and many other cases show the relief I am seeking.

We didn't fix this issue because we simply did not know it was an issue. Ms. Dwyers declaration is factually wrong on it's face and there is alot more to her meetings with me than she says. I pray this court sees the mistakes, oversights, surprises and the extraordinary circumstances that require relief from my habeas denial. I respectfully request for the opportunity to fix this, allow me to sign an oath to the originally filed 2255 under the penalty of perjury and/or a sworn affidavit (both of which I have ready now and will deliver to this court the next business day I receive the order). Allow my mother, Barbara Phillips, to file a sworn affidavit

7

in support of my claims and her correspondence with Ms. Dwyer, (that too my mother has ready and can get that to the court immedeately after request). This way I have at least SOME evidence on the record to warrant a hearing. Opening up my 2255 proceedings again very well may lead to relief from my sentence that can save my life. Thank you for your time Your Honor.

                                              Respectfully Submitted,

                                                                7/10/23
                                              William Phillips
                                                 Pro Se
                                              24864-052
                                            FCI Otisville
                                            P.O. Box 1000
                                     Otisville, N.Y. 10963

VERIFICATION

I, William Phillips, Declare under the penalty of perjury pursuant to 28 USC 1746 that the facts stated therein are true and correct, and that I delivered this motion to the prison mail office here at Otisville FCI with Prepaid Postage on July 10 2023.

William Phillips

CERTIFICATE OF SERVICE

I certify that I mailed a copy of this motion with prepaid postage on July 10 2023 addressed to: U.S. Attorney's Office, 211 West Fort Street, Suite 2001 Detroit, Michigan 48226

William Phillips

I certify that I mailed a copy of this motion with prepaid postage on July 10 2023 addressed to: Theodore L.evin U.S. Courthouse, 231 W. Lafayette Blvd. Detroit, Michigan 48226

William Phillips

## Attached

1. Memorandum regarding Cooperator information from the Court Administration and Case Management of the Judicial Conference and the Executive Summary of the Survey of Harm to Cooperators: Final Report

2. Lisa Dwyer Email from July 16, 2018 stating she will not see me that day





## COMMITTEE ON COURT ADMINISTRATION AND CASE MANAGEMENT
## OF THE
## JUDICIAL CONFERENCE OF THE UNITED STATES

**Wm. Terrell Hodges, Chair**
Anna J. Brown
Charles S. Coody
Audrey G. Fleissig
Kim R. Gibson
Joseph N. Laplante
Robert E. Littlefield, Jr.

Philip R. Martinez
Norman A. Mordue
Michael R. Murphy
Rebecca J. Pallmeyer
Roger W. Titus
Reggie Walton

Mark S. Miskovsky, Staff

June 30, 2016

MEMORANDUM

To: Chief Judges, United States District Courts
District Judges, United States District Courts
District Court Executives
Clerks, United States District Courts

From: Judge Wm. Terrell Hodges, Chair
Committee on Court Administration and Case Management

Judge Roger W. Titus, Chair, Privacy Subcommittee
Committee on Court Administration and Case Management

RE: INTERIM GUIDANCE FOR COOPERATOR INFORMATION

On behalf of the Committee on Court Administration and Case Management (CACM), we would like to share interim guidance that the Committee developed concerning the treatment of cooperator information in criminal cases. This guidance is "interim" because the issue has been referred to the Committee on Rules of Practice and Procedure for formal consideration. As discussed below, however, the Committee believes this is an issue of such importance that it requests each court to consider adopting the provisions of the guidance, in a manner consistent with local practice, applicable case law, and the court's rule-making authority, pending consideration through the Rules Enabling Act process.

### Background

The CACM Committee has responsibility for issues relating to court operations, including the task of helping courts maintain their records in a way that protects both the public right of access to case filings and the legitimate privacy interests of litigants. Perhaps the most challenging example of this responsibility is balancing public access to criminal cases against the potential exposure of government cooperators. Remote electronic access dramatically increased

the potential for illicit use of case information regarding cooperators, and it is largely for this reason that the Judicial Conference initially delayed public electronic access to criminal case files. This concern also prompted the Committee in 2008 to endorse practices aimed at minimizing the use of case documents to identify cooperators, and encourage all courts to consider their implementation. March 2008 Report of the CACM Committee to the Judicial Conference, pp.8-9; *Guide to Judiciary Policy*, Vol. 10, Ch. 3, § 350.

Since then, the CACM Committee has continued to track the use of criminal case information to identify cooperators. Despite courts' individual efforts, the problem continues to grow. Based on increasing concerns expressed by judges about harm to cooperators, this Committee, in August 2014, asked the Federal Judicial Center (FJC) to survey judges, U.S. attorneys, federal defenders, Criminal Justice Act panel representatives, and probation and pretrial services chiefs to measure the scope and severity of the problem.

The FJC analyzed the responses to these surveys and collected its findings in a report entitled "Survey of Harm to Cooperators," which is now available on the FJC website at http://www.fjc.gov/public/pdf.nsf/lookup/Survey-of-Harm-to-Cooperators-Final-Report.pdf/$file/Survey-of-Harm-to-Cooperators-Final-Report.pdf ("FJC Report"). The FJC Report fully substantiates the concern that harm to cooperators persists as a severe problem. For example, district judge respondents reported 571 instances of harms or threats – physical or economic – to defendants and witnesses between the spring of 2012 and the spring of 2015, including 31 murders of defendant cooperators.

The Committee believes these threats and harms should be viewed in the context of a systemic problem of court records being used in the mistreatment of cooperators. The FJC Report presents 363 instances in which court records were known by judges to be used in the identification of cooperators. This is a particular problem in our prisons, where new inmates are routinely required by other inmates to produce dockets or case documents in order to prove whether or not they cooperated. If the new inmates refuse to produce the documents, they are punished. The FJC Report confirms the existence and widespread nature of this problem,[1] which is aggravated by prison culture and the prevalence of organized gangs.

The conditions cooperators face in prison also impact the sentences imposed by the judiciary. Multiple respondents in the FJC Report noted that cooperators' fear of harm is so great that some forgo the potential benefits of U.S. Sentencing Guidelines Manual § 5K1.1 out of fear that the related case documents will identify them as cooperators. If they are identified as cooperators after arriving in prison, in many cases the only effective protection available is to move the threatened inmate into a segregated housing unit or solitary confinement, with an attendant loss of the privileges that would otherwise be available to that inmate – an ironic and more onerous form of punishment not typically contemplated by the sentencing judge.

Chief Judge Ron Clark of the Eastern District of Texas recently held a hearing regarding a motion to unseal plea agreements that involved extensive factfinding on these issues.[2] The hearing involved the participation of the local United States Attorney's Office, the Office of the

---

[1] *See* FJC Report, Appendix I: Open-Ended Comments (discussing practices in BOP facilities).

[2] *United States v. McCraney*, 99 F. Supp. 3d 651 (E.D. Tex. 2015).

Public Defender, counsel for five defendants, and counsel for the newspaper who had requested the unsealing, as well as an amicus filing by another newspaper. At the hearing, the court heard testimony from two Bureau of Prisons (BOP) representatives and a federal prosecutor concerning the experiences of cooperators in prison. Based on its factfinding, the court concluded that the disclosure of information in plea agreements that identifies cooperating defendants "puts those defendants at risk of extortion, injury, and death." It therefore found "an overriding interest in preventing disclosure of information that states or even hints that a defendant has agreed to be an informant or cooperating witness." The court's local rules regarding criminal case management were updated as a result, so that all plea agreements from that point forward include a sealed supplement containing any discussion of cooperation. See E.D. Tex. L. R. CR-49(c)-(d). The court found that this new procedure – which it applied to the case at hand – "balances the public's right of access against the higher need to protect the lives and safety of defendants" and other individuals, as well as "the need to encourage accused individuals to provide the truthful information that is crucial to the successful prosecution of serious offenses."

Certainly, U.S. attorneys and the BOP must continually strive to protect cooperators and ensure the safety of prisoners. The Committee believes, however, that the judiciary also has a role in finding solutions to these problems. Of particular concern for judges, apart from the need to protect the well-being of those we sentence, is the fact that our own court documents are being used to identify the cooperators who then become targets. In many instances these documents are publicly available online through PACER. Because criminal case dockets are being compared in order to identify cooperators, every criminal case is implicated.

**Guidance**

The CACM Committee believes a nationwide, uniform solution providing for greater control over access to cooperator information is required to address this systemic national problem. It has therefore asked the Committee on Rules of Practice and Procedure to consider the issues described in the FJC Report and determine whether changes to the criminal rules are warranted as a long-term remedy. In the interim, the CACM Committee is also asking courts to consider taking more immediate steps at the district level to address this problem. **The Committee has developed the attached guidance for protecting cooperator information found in criminal case documents and recommends that each district adopt it via local rule or standing order.** The guidance is based on practices for protecting cooperators already used in a number of courts.[3]

The guidance recommends that, in all criminal cases, courts restructure their practices so that documents or transcripts that typically contain cooperation information – if any – would include a sealed supplement. Any discussion of defendants' cooperation – or lack thereof – would then be limited to these sealed supplements. For example, any plea agreement docketed in a criminal case would be accompanied by a separate, sealed supplement containing either discussion of cooperation or a simple statement that there was no cooperation. As a result, any member of the public who reviews the docket would be unable to determine, based on the plea agreement, whether a given defendant has cooperated. By adding standardized sealed material that will appear in every case, whether or not there is a cooperator, and placing all discussion of

---

[3] Thirty-three district courts, or over one-third, have already adopted local rules or standing orders to make all criminal defendants appear identical in the record to obscure cooperation information. FJC Report at 26.

cooperation under seal, adoption of these practices would inhibit identification of cooperators through dockets and case documents. The public, however, would continue to have access to key criminal case files – albeit without sensitive information regarding cooperation.[4]

Importantly, the government's disclosure obligations to opposing counsel would not be affected by implementation of this guidance, and the public would still have access to much of the plea and sentencing material that is now available.

### Discussion

The CACM Committee would like to emphasize that, in recommending this guidance, its members understand and embrace our duty as judges to vigilantly safeguard the public's right to access court documents and proceedings pursuant to the First Amendment and under common law. Nonetheless, the Committee finds that the harms to individuals and the administration of criminal justice in this instance are so significant and ubiquitous that immediate and effective action should be taken to halt the malevolent use of court documents in perpetuating these harms, consistent with each court's duty to exercise "supervisory power over its own records and files."[5]

The Committee is also mindful of the high burden that must be met before shielding particular case information from the public's eye,[6] but notes that this should not be seen as an absolute bar to exercising authority over court records and proceedings. Indeed, there are many well-established restrictions on access to criminal case information that address compelling government interests.[7] The CACM Committee believes that the need in this instance is as great as, if not greater than, the needs that supported adoption of restrictions in the past.

---

[4] The guidance contains other provisions, including procedures for prisoners to access sealed case materials in a secure environment, consistent with local BOP policy and court rules. The Committee is in communication with the Executive Office for U.S. Attorneys and the BOP regarding the provisions and local implementation.

[5] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[A]ccess has been denied where court files might have become a vehicle for improper purposes.").

[6] *See Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 509-13 (1984) (recognizing that, where right of public access applies, a court may close court proceedings or deny access to transcripts, but must articulate reasons for doing so in specific and reviewable findings demonstrating "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest"). Several circuits also have issued decisions that may impact court efforts to implement this guidance. *See, e.g.*, *United States v. DeJournett*, 817 F.3d 479 (6th Cir. 2016) (vacating policy-based order that sealed the entirety of a plea agreement without case-specific findings); *In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) (finding a public right of access to the cooperation addendum of a plea agreement, albeit with limited analysis of whether the right should apply); *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) (acknowledging that potential threats to criminal investigations or individuals "may well be sufficient to justify sealing a plea agreement," but vacating sealing of cooperator information as unwarranted where fact of cooperation was publicly known).

[7] *See, e.g.*, 18 U.S.C. § 3153(c) (making pretrial services reports confidential); Fed. R. Crim. P. 32 & 18 U.S.C. § 3552(d) (limiting distribution of presentence investigation reports); Fed. R. Crim. P. 49.1 (requiring redaction of personally identifiable information and minors' names); Fed. R. Crim. P. 49.1, 2007 Advisory Comm. Notes & *Guide to Judiciary Policy*, Vol. 10, Ch. 3, § 340 (categorizing as non-public a number of criminal case documents, including juvenile records); 18 U.S.C. § 5038 (making names and pictures of juveniles in delinquency proceedings non-public; safeguarding records from "unauthorized persons"); JCUS-MAR 01, p. 17 (dictating that statements of reasons are not to be disclosed to the public); 18 U.S.C. § 3662(c) (mandating that conviction records maintained by the Attorney General "not be public records").

It is important to emphasize that, to the extent possible, broad adoption of the CACM guidance is key to its effectiveness at addressing the problems discussed above. If districts continue to take different approaches toward addressing this problem, there is a real risk that well-intentioned measures to protect cooperators in one court might result in criminal dockets that indicate cooperation, rightly or wrongly, when compared to those of another court. The inadequacy of a patchwork approach to sealing cooperator-related material is highlighted in Chief Judge Clark's opinion and referenced by a number of responses in the FJC Report. It is for this reason that the Committee has requested the Committee on Rules of Practice and Procedure to consider this issue for national application.

Finally, in drafting and recommending this guidance, the CACM Committee emphasizes that it has acted to the best of its ability to narrow the scope of the proposed measures. The Committee also thoroughly considered other potential options for addressing this issue in each district, such as those it recommended for potential adoption in 2008.[8] These options, however, suffer from either failing to move the judiciary toward a uniform approach or by making a greater volume of case information unavailable to the public. For example, some courts presently seal the entirety of all plea agreements in an attempt to prevent identification of and harm to cooperators. By implementing the attached guidance and sealing only cooperator information, as the CACM Committee recommends, these courts may actually increase the amount of criminal case information available to the public.[9]

The CACM Committee believes that the misuse of court documents to identify, threaten, and harm cooperators is a systemic problem, and can only be addressed through a more uniform approach toward public access to cooperator information. To that end, the Committee believes uniform implementation of the attached guidance at the local level -- pending consideration of a national rule -- would be an important, measured step toward that goal, and one which is appropriately tailored to address the significant interests involved.

Thank you for the thoughtful consideration we know you and your colleagues will give to this issue.

---

[8] *See* March 2008 Rep. of the CACM Committee to the Judicial Conf., pp. 8-9; *Guide to Judiciary Policy*, Vol. 10, Ch. 3, § 350 (listing as potential measures (1) shifting cooperation information into non-case file documents, (2) sealing plea agreements, (3) restricting access to plea agreements, (4) redacting all cooperation information, (5) restructuring case records so that all criminal cases appear identical, and (6) delaying publication of plea agreements referencing cooperation).

[9] The CACM Committee recognizes that there is no complete or perfect solution. If a cooperator testifies during a trial, for example, or is sentenced below a statutory mandatory minimum where the "safety valve" does not apply (18 U.S.C. § 3553(f)), his cooperation is apparent. This obviously does not mean, however, that solutions should not be adopted for those cases in which they are available and can be effectively applied.

     If you have any questions or concerns, please feel free to contact either of us, Judge Terry Hodges (Chair, CACM Committee) or Judge Roger Titus (Chair, CACM Committee's Privacy Subcommittee). You can also contact Sean Marlaire, Administrative Office Policy Staff, Court Services Office, at 202-502-3522 or by email at Sean_Marlaire@ao.uscourts.gov.

Attachment

cc:    Honorable Jeffrey S. Sutton, Chair, Committee on Rules of Practice and Procedure
       Chief Probation Officers
       Federal Public and Community Defenders
       CJA Panel Attorney District Representatives

# Survey of Harm to Cooperators: Final Report

*Prepared for the Court Administration and Case Management Committee, the Committee on Defender Services, and the Criminal Law Committee of the Judicial Conference of the United States*

Margaret S. Williams, Donna Stienstra, and Marvin Astrada

Federal Judicial Center

2016

This Federal Judicial Center publication was undertaken in furtherance of the Center's statutory mission to develop and conduct research and education programs for the judicial branch. While the Center regards the content as responsible and valuable, it does not reflect policy or recommendation of the Board of the Federal Judicial Center.

## Executive Summary

In March 2015, pursuant to an August 2014 request made to the Federal Judicial Center, we surveyed federal district judges, U.S. Attorney's Offices, federal defenders, Criminal Justice Act (CJA) district panel representative's offices, and chief probation and pretrial services offices about harm or threat of harm to government cooperators. We summarize the results of the survey below.

- Respondents were asked to report harm to defendants/offenders and witnesses in the past three years for up to five cases. We limited the number of cases to five to prevent overtaxing respondents.
- Of 1,371 recipients, 976 completed the survey—a response rate of 71%.
- Respondents reported a minimum of 571 instances of harm to defendants/offenders and witnesses. Cases often involved harm to both defendants/offenders and witnesses.
- Among all types of harm or threat, respondents most often reported threats of physical harm to defendants/offenders or witnesses and to friends or family of defendants/offenders or witnesses.
- Defendants were most likely to be harmed or threatened when in some type of custody, while witnesses were either in pretrial detention or not in custody at the time of harm or threat.
- Respondents frequently reported court documents or court proceedings as the source for identifying cooperators.
- Respondents reported that concerns of harm or threat affected the willingness of both defendants/offenders and witnesses to cooperate with the government in the past three years.
- Respondents generally agreed that harm to cooperators was a significant problem and that more needed to be done, by the judiciary and/or the Bureau of Prisons, to protect cooperators from harm.

 Gmail

Barbara Phillips <bphillips1216@gmail.com>

## William Phillips
5 messages

---

**Barbara Phillips** <bphillips1216@gmail.com>  Mon, Jul 16, 2018 at 2:24 PM
To: Lisa Dwyer <dwyerl247@aol.com>

Spoke to William today. Told him you will see him this afternoon. We are so scared how he will react to the 30 yr. recommendation. I hope you can give him some comfort that there is still a chance for a better sentence. It seems the government thinks he is guilty of all the terrible things the victims went through?

---

**Barbara Phillips** <bphillips1216@gmail.com>  Mon, Jul 16, 2018 at 6:59 PM
To: Lisa Dwyer <dwyerl247@aol.com>

Sorry to bother you again. William is hoping to see you today. Are you able to see him today?

---

**Lisa Dwyer** <dwyerl247@aol.com>  Mon, Jul 16, 2018 at 7:43 PM
To: Barbara Phillips <bphillips1216@gmail.com>

I can't. But will see him before court. He's not being sentenced tomorrow. After the girls make their statements, the others are sentenced but not him.

Lisa Dwyer

[Quoted text hidden]

---

**Barbara Phillips** <bphillips1216@gmail.com>  Mon, Jul 16, 2018 at 8:29 PM
To: Lisa Dwyer <dwyerl247@aol.com>

I hope that's good that he won't be sentenced tomorrow with the others. William is besides himself not knowing what's going on. He suspects they are asking for more time served. I told him that might be the case and now he wants to know for sure. I don't know what to do?

[Quoted text hidden]

---

**Barbara Phillips** <bphillips1216@gmail.com>  Wed, Oct 23, 2019 at 7:59 PM
To: Jbw@nationalprisonconsultants.com

forwarding some of the emails with Lisa Dwyer

[Quoted text hidden]

William Phillips
24864-052
Federal Correctional Institution
P.O. Box 1000
Otisville, NY 10963



U.S. POSTAGE PAID
FCM LG ENV
OTISVILLE, NY 10963
JUL 10, 2023
$0.00
R2305K138449-25

48226

Legal Mail

U.S. MARSHALS

Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd.
Detroit Michigan 48226
c/o
Stephen S.





